**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSÉ LUIS CERÓN SARRIA, Individually
and on Behalf of All Others Similarly Situated,

                        Plaintiff,

 v.                                                              Case No. 1:25-CV-00889-VM

TELUS INTERNATIONAL (CDA) INC.,
JEFFREY PURITT, VANESSA KANU,
GOPI CHANDE, and MICHAEL RINGMAN,

                        Defendants.

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**
**FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

ARGUMENT ....................................................................................................................................1

I.      The Complaint Fails to Plead That Any Challenged Statement Is False ............................1

II.     Plaintiff Fails to Plead a Strong Inference of Scienter.......................................................7

III.    Plaintiff Fails to Plead Loss Causation ............................................................................11

CONCLUSION.............................................................................................................................12

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson* v. *Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)..................................................................................................11

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005).....................................................................................10

*In re Amarin Corp. PLC Sec. Litig.*,
2016 WL 1644623 (D.N.J. Apr. 26, 2016) ...............................................................................3

*In re Avon Securities Litigation*,
2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ..........................................................................8

*Boston Ret. Sys.* v. *Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021).....................................................................................11

*City of Omaha Police & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020).......................................................................................2

*City of Sterling Heights Police & Fire Ret. Sys.* v. *Vodafone Grp. Pub. Co.*,
655 F. Supp. 2d 262 (S.D.N.Y. 2009).......................................................................................9

*Colbert* v. *Rio Tinto PLC*,
824 F. App'x 5 (2d Cir. 2020) ..................................................................................................8

*In re DNTW Chartered Accountants Sec. Litig.*,
172 F. Supp. 3d 675 (S.D.N.Y.)...............................................................................................9

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013).......................................................................................7

*In re GigaCloud Tech. Inc. Sec. Litig.*,
2025 WL 307378 (S.D.N.Y. Jan. 27, 2025) .............................................................................2

*Gray* v. *Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020).......................................................................................5

*Hampshire Equity Partners II, L.P.* v. *Teradyne, Inc.*,
2005 WL 736217 (S.D.N.Y. Mar. 30, 2005) ............................................................................9

*In Carmignac Gestion, S.A.* v. *Perrigo Co. PLC*,
2019 WL 3451523 (D.N.J. July 31, 2019).................................................................................7

*Kuriakose* v. *Fed. Home Loan Mortg. Corp.*,
   897 F. Supp. 2d 168 (S.D.N.Y. 2012)......................................................................8

*In re Nielsen Holdings PLC Sec. Litig.*,
   510 F. Supp. 3d 217 (S.D.N.Y. 2021)....................................................................10

*In Re Philip Morris Int'l Inc. Sec. Litig.*,
   89 F.4th 408 (2d Cir. 2023) ...................................................................................6

*Emps.' Ret. Sys.* v. *Blanford*,
   794 F.3d 297 (2d Cir. 2015)....................................................................................9

*Stadium Cap. LLC* v. *Co-Diagnostics, Inc.*,
   2024 WL 456745 (S.D.N.Y. Feb. 5, 2024)..............................................................9

*In re Stemline Therapeutics, Inc. Sec. Litig.*,
   313 F. Supp. 3d 543 (S.D.N.Y. 2018)....................................................................3

*In re STMicroelectronics N.V. Sec. Litig.*,
   2025 WL 2644241 (S.D.N.Y. Sept. 15, 2025)........................................................10

*In re Synchrony Fin. Sec. Litig.*,
   2022 WL 427499 (D. Conn. Feb. 11, 2022) ...........................................................8

*Teamsters Loc. 445 Freight Div. Pension Fund* v. *Dynex Cap. Inc.*,
   531 F.3d 190 (2d Cir. 2008)..................................................................................10

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022)...................................................................10

*In re United States Oil Fund, LP Sec. Litig.*,
   2025 WL 2771445 (S.D.N.Y. Sept. 29, 2025)........................................................2

*in re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011)....................................................................8

*Yannes* v. *SCWorx Corp.*,
   2021 WL 2555437 (S.D.N.Y. June 21, 2021) ......................................................10

**Statutes**

Private Securities Litigation Reform Act..............................................................5, 10

Plaintiff argues that TI is an AI company that seized on AI hype to boost its share price, but never developed a single viable AI product or service. That accusation is ***entirely unsupported*** by pleaded facts, as the Opposition lays bare:

**No False Statement**: Like the Complaint, the Opposition fails to identify ***any*** AI product or service that TI falsely claimed to have. Plaintiff relies on CWs and supposed "admissions," but neither support his fictional proclamation that TI falsely claimed ***any*** AI capabilities. To the contrary, Plaintiff admits that TI's four business lines generated millions in revenue from selling AI-related capabilities, and concedes through CWs that AI-related capabilities did exist.

**No Scienter**: Plaintiff concedes that Defendants had no motive to lie. And Plaintiff cites ***no facts*** showing that Puritt, Kanu, Chande and Ringman—the senior executives who purportedly engaged in fraud—knowingly engaged in misconduct. Indeed, the Individual Defendants are barely mentioned in the Opposition. Plaintiff comes nowhere near the required "strong inference" that any Defendant acted with the required fraudulent intent.

**Loss Causation**: Plaintiff admits that TI's stock dropped when TI announced disappointing financial results. Since Plaintiff cannot identify any corrective disclosure revealing the so-called "truth" that TI lacked AI capabilities, loss causation is not pleaded.

## ARGUMENT

### I.      The Complaint Fails to Plead That Any Challenged Statement Is False

Plaintiff argues the Challenged Statements are false because TI falsely claimed to have AI capabilities. But Plaintiff relies only on (1) four CWs who do not identify any AI capability that TI falsely claimed to have, and (2) purported "admissions" that TI had "only" AI pilots, which no Defendant made.

**CWs**: Opposite to identifying any specific AI product or service that TI falsely claimed to have, ***every*** CW admits that TI developed and sold AI capabilities: CW-1 "contributed to

automation and AI initiatives" (¶30); CW-2 "sold WillowTree/Telus' products and services, including AI, to clients" (Opp. 11); CW-3 "developed apps and software programs and, thus, knew about WillowTree/Telus' AI capabilities" (*id.*); and CW-4 "train[ed] WillowTree employees in AI" (Opp. 11) and admits that TI developed Fuel iX, an AI-product (¶118). The Court should reject Plaintiff's unsupported and internally-inconsistent CW arguments that TI lacked AI capabilities. *See In re United States Oil Fund, LP Sec. Litig.*, 2025 WL 2771445, at *15 (S.D.N.Y. Sept. 29, 2025) ("a court is neither obligated to reconcile nor accept" inconsistent and contradictory allegations).

The CW arguments also fail because the CWs had no company-wide visibility into AI business and strategy. (Br. 10-12.) Plaintiff concedes CW allegations may be credited only where they "support the probability that a person in the position occupied by the source would possess the information alleged." (Opp. 10.) Three CWs worked in one business line, WillowTree— which the CWs admit ***did have*** AI capabilities—and another did not even work at TI.[1] (Br. 11-12.) Unlike *In re GigaCloud Tech. Inc. Sec. Litig.*, 2025 WL 307378 (S.D.N.Y. Jan. 27, 2025), the CWs here did not work in relevant positions, nor do they provide detailed descriptions showing the absence of AI. *Id.* at *7-*8. In sum, the CWs offer no support.

**Supposed "Admissions"**: Plaintiff also relies on Defendants' supposed "admissions" that TI "only" offered "pilot" AI products. (Br. 12-13.) But Plaintiff injected the word "only;" TI never said that its AI offerings were limited "only" to pilots. (*Id.*; Ex. 16 at 4.) Plaintiff admits

---

[1]  Plaintiff insists CW1 was employed by TI's parent, (Opp. 11-12), but CW1 worked for TELUS Communications Inc., a subsidiary of TI's parent TELUS Corporation, which operates independently of TI. (¶30.) Plaintiff admits that CW1 was only employed before the class period. (Opp. 11.) Pre-class period knowledge is particularly outdated here, given the recent rapidity of developments in GenAI. *See City of Omaha Police & Fire Ret. Sys.* v. *Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 411 (S.D.N.Y. 2020) ( "no bright-line rule" against pre-Class Period allegations, but the information must be relevant).

that Defendants did not use the word "only," (Opp. 9-10), but asserts *13 times* that TI "only" or "merely" had pilot AI offerings.  Plaintiff cannot change Defendants' statements by injecting words they never said.  *See In re Stemline Therapeutics, Inc. Sec. Litig.*, 313 F. Supp. 3d 543, 549 (S.D.N.Y. 2018) ("Plaintiffs cannot make up statements and then attribute them to defendants" to support fraud claim); *In re Amarin Corp. PLC Sec. Litig.*, 2016 WL 1644623, at *19 (D.N.J. Apr. 26, 2016) (rejecting allegations that "completely mischaracterize[d]" defendant's statement), *aff'd*, 689 F. App'x 124 (3d Cir. 2017).  There was no "admission" that TI had "only" AI pilots.

Since every Challenged Statement is allegedly false based on defective CW allegations and purported "admissions," Defendants' motion should be granted.

Falsity is also not pleaded for each category of Challenged Statements for the following supplemental reasons:

As a threshold issue, Plaintiff repeatedly misdescribes the Challenged Statements. Defendants urge the Court to review the actual statements, excerpted in Exhibit 1, rather than Plaintiff's snippets,[2] and address them category-by-category:

**AI Offerings Statements**:  The AI Offerings Statements concern TI's AI offerings in the Digital/IT business, including initiatives to leverage GenAI.  (Br. 10.)  Three CWs worked within this division and conceded AI capabilities existed, and no CW identified any AI capability that TI falsely claimed to have.  *Supra* 2-3.  Plaintiff lumps other Challenged Statements into this category, calling it "AI Capabilities," (Opp. 6-12), but those statements concern different business lines, about which Plaintiff and his CWs offer no facts.  *Infra* 4-5.

---

[2]    (*See, e.g.*, Opp. 10 (claiming TI purported to have its own "market leading generative AI," citing statement describing *TI's customers* as "market leading generative AI foundational model builders"); Opp. 7 (inserting "[AI]" in the statement  "meaningful [AI] capability at scale," when the "capability" being discussed was TI's content moderator workforce).

The Opposition repeatedly equates AI with GenAI, arguing that the AI Offerings Statements were false because TI did not develop its own "proprietary" foundational GenAI model.  (Opp. 7.)  But TI never claimed to have developed its own GenAI model.  TI offered AI long before GenAI emerged, and continues to do so.  (Br. 3-5.)[3]  Once GenAI emerged, TI disclosed that its  Digital/IT business uses foundational GenAI models (like ChatGPT) as a base and builds custom applications tailored to customer needs.  (Br. 12; *e.g.*, Ex. 6 at 8 ("The possibilities presented by ChatGPT and similar alternatives are seemingly endless").  The CWs admit this.  (Opp. 7 (TI "build[s] apps around [ChatGPT]"); Opp. 8 (TI "co-develop[s] products with…customers" on a "case-by-case" basis.).)  Thus, TI never claimed to develop its own GenAI model, but rather, offers unique, customer-centric AI-powered capabilities, which *are* proprietary to TI.  (Br. 4-6.)  Plaintiff's cited cases (Opp. 8) concern companies that, unlike TI, misstated their capabilities.

**<u>AI Data Statements</u>**:  The AI Data Statements concern TI's data annotation business, which assists clients in training AI models (often called "large language models" or "LLMs"). (Br. 5, 13-14.)  The Opposition concedes that TI offers AI data annotation services and, indeed, "enter[ed] the AI market" by establishing this business line.  (Opp. 2.)  Plaintiff makes *no* arguments that any statement about data annotation is false.  (Opp. 9-10.)  Conceding this, Plaintiff argues instead that the AI Data Statements are not about data annotation.  (Opp. 10.)  Not so.  For example, Plaintiff says that TI "falsely claim[ed] Telus was 'seeing good…demand,' particularly for its 'market-leading generative AI,'" (Opp. 10), but the statement expressly described an "encouraging year *for our AI Data Solutions business*" with demand "led by the work we do to

---

[3]  Plaintiff distorts Defendants' statements to suggest that TI misrepresented that "new" GenAI capabilities had been "perfected [] over the last many years."  (Opp. 8.)

support market-leading generative AI foundational model builders." (¶119.)  Likewise, Plaintiff challenges the reference to a "near-term gold rush," but ignores that it referred to "helping the hyperscalers[4] build…large language models"—*i.e.*, data annotation services.  (¶147.)  These statements undoubtedly describe AI Data annotation services, which Plaintiff concedes existed.

**Outlook Statements**:  Defendants' motion showed that the Outlook Statements, offering TI's positive views on AI, are not actionable because (1) the Complaint does not allege any Defendant did not subjectively hold these opinions; (2) they are puffery; and (3) they are protected forward-looking statements. (Br. 15-18.)  Plaintiff's arguments in response fail:

*First*, Plaintiff's semantic argument that statements are not forward-looking if phrased in present or past tense (Opp. 15), is contrary to settled law.  The Outlook Statements "endorse or state the speaker's belief in a certain future outlook" and thus "satisfy the PSLRA forward-looking requirement."  *Gray* v. *Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 387 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021); (*See, e.g.*, ¶108 ("*we'll* continue to be able to distinguish ourselves from the competition"); ¶111 ("there are meaningful opportunities *ahead*"); ¶133 ("AI is *going to be* the standout for us"); ¶143 ("we *anticipate* demand starting to recover").)[5]

*Second*, Plaintiff strains to characterize the Outlook Statements as "incorporat[ing] a present fact" about TI's AI capabilities.  (Opp. 16.)  But "all statements of projections come with the implied statement that they…are based on recent…performance," which does not exclude them from the PSLRA safe harbor.  *Wesco*, 454 F. Supp. 3d at 390.  Anyway, TI *did* have AI capabilities, so any such implied "fact" is accurate.  *Supra* 1-4.

---

[4]  "Hyperscalers" are large cloud computing companies, such as Google Cloud and Amazon Web Services.  TI has never purported to be a hyperscaler.

[5]  Plaintiff's cited cases are inapposite because the statements at issue concerned present conditions. (Opp. 15-16.)

*Third*, Plaintiff argues that the Outlook Statements are not inactionable opinion[6] or puffery because they are based on "false embedded representations," (Opp. 18), and "objectively verifiable facts," (Opp. 19.)  But many Statements provide no verifiable facts at all, and Plaintiff fails to cite any fact that is actually false.  *Supra* 1-5.  Plaintiff certainly cites no facts showing that any Individual Defendant did not honestly hold the expressed opinions.  (Br. 18.)

*Fourth*, Plaintiff reframes a subset of the Outlook Statements as "Pricing Statements." Plaintiff argues that Defendants "assured investors that Telus could command high prices for its offerings" only to "belatedly reveal[] Telus had been cutting its prices."  (Opp. 14-15.)  Defendants said no such thing, and neither do the documents Plaintiff cites.  (Opp. 14; ¶108.)  To the contrary, Defendants warned that pricing was "absolutely getting more challenging" and made no assurances about commanding high prices.  (Ex. 11 at 10.)[7]

Contrary to Plaintiff's claim that pricing risks were presented as hypothetical (Opp. 14), TI repeatedly discussed increasing pricing pressure and the need to reduce prices to win business. (*See* Ex. 11 at 10 ("[t]he pricing environment has continued to get more and more competitive" and "it's becoming more and more of that Sophie's Choice challenge of just how much of a tradeoff on margin yield through price reductions are we willing to tolerate"); Ex. 12 at 14 ("pricing sensitivity has indeed amplified" but TI was "not willing to discount our prices so much so that the margin yield implications are catastrophic"); Ex. 14 at 15 (describing a "pervasive,

---

[6]    That opinions must be preceded by explicit belief language (Opp. 18) has been deemed "not necessary."  *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023).

[7]    Plaintiff challenges Puritt's statement that he was "supremely confident" of TI's visibility into its 2023 guidance, which is not about pricing, and there is no allegation of subjective falsity.

persistent pressure around more for less" making it difficult to "capture the demand opportunity at those pressurized price points but still generate our targeted margin yield").[8]

**Cost Savings Statements**:  Plaintiff fails to plead that projections of AI-based internal cost-savings were false.  (Br. 19.)  Plaintiff concedes that TI actioned internal cost savings plans, but says they were not AI-based.  (Opp. 13.)  This assertion is unsupported by any fact.  None of the CWs claim visibility into senior decisions concerning company-wide cost saving measures, and two CWs had already departed by the time the Cost Savings Statements were made.  In any event, the CWs claim to have "contributed to automation and AI initiatives" (¶30), which undermines Plaintiff's argument.

The Cost Savings Statements are also forward-looking projections, and Plaintiff does not plead that any Defendant did not subjectively believe they were achievable.  (Opp. 13 (relying on magnitude of miss, but not arguing subjective falsity); Br. 19-20.)  That TI fell short in reducing costs by the full projected amount does not, in hindsight, make the statements false.

## II.    Plaintiff Fails to Plead a Strong Inference of Scienter

The Opposition weakly argues that Plaintiff has pleaded scienter.  Plaintiff barely addresses the Individual Defendants—even though he is required to separately plead intent of every named Defendant—and his remaining arguments are meritless.

**No Motive**.  Plaintiff does not dispute that motive is not pleaded for any Defendant.  (Br. 21.)  Absent motive, Plaintiff must supply correspondingly greater allegations of conscious misbehavior or recklessness, which he does not provide.

---

[8]    Unlike *In re Facebook, Inc.*, 986 F. Supp. 2d 487, 515-16 (S.D.N.Y. 2013), Plaintiff pleads no facts supporting that the pricing environment deteriorated prior to warnings.  And unlike here, defendants in *In Carmignac Gestion, S.A.* v. *Perrigo Co. PLC*, 2019 WL 3451523, at *11 (D.N.J. July 31, 2019), falsely promised that the company was "insulated" from pricing issues.

**No Conscious Misbehavior or Recklessness**.  Plaintiff concedes he identifies no "specific reports" showing any Defendant's knowledge of facts contradicting public statements (Opp. 24 n.21), and admits "the CWs did not directly interact with the Individual Defendants" (Opp. 22).[9] These concessions defeat scienter because ***no pleaded facts*** support an inference that any Defendant knowingly made false statements.  For Ringman, Plaintiff makes no arguments at all, (Br. 22-23), thus conceding he must be dismissed.  *See Colbert* v. *Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020).  Plaintiff's remaining arguments are inadequate:

**Pilots**:  Plaintiff concedes Puritt did not admit TI had "only" pilot AI offerings, yet still relies on this erroneous assertion.  (Opp. 9.)  Bottom line: neither Puritt nor Chande said that TI offered "only" pilots.  Defendants actually said that TI uses pilots for new engagements—an openly-disclosed fact (Br. 6-7)—and warned that it was seeing "elongated sales cycles" and "longer decision timeframes" (Br. 7), a warning that is inconsistent with intent to deceive.  Plaintiff calls these disclosures "hypothetical" and "boilerplate."  (Opp. 22.)  Nonsense.  The use of pilots and long sale cycles was transparently disclosed.[10]  "It defies logic to conclude that executives who are seeking to perpetrate fraudulent information upon the market would make such fulsome disclosures."  *Kuriakose* v. *Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 185 (S.D.N.Y. 2012), *aff'd*, 543 F. App'x 72 (2d Cir. 2013).

Plaintiff's cited cases demonstrate the inadequacy of his allegations, because each relied on internal documents, detailed CW accounts, or other facts establishing a disconnect between internal information and public statements.  *See in re Vivendi Universal, S.A. Sec. Litig.*, 765 F.

---

[9]     In contrast, the CWs in *In re Avon Securities Litigation*, 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019), (Opp. 22), held high-level positions in defendants' direct reporting lines and reviewed documents shared with defendants.  *Id*. at *2, *6.

[10]    *In re Synchrony Fin. Sec. Litig.,* 2022 WL 427499, at *10 (D. Conn. Feb. 11, 2022), the defendant represented that the disclosed risk *had not materialized*–the opposite happened here.

Supp. 2d 512, 547 (S.D.N.Y. 2011) ("stark contrast between…internal documents and [] external statements"), *aff'd*, 838 F.3d 223 (2d Cir. 2016); *Emps.' Ret. Sys.* v. *Blanford*, 794 F.3d 297, 308 (2d Cir. 2015) (CWs detailed "efforts to deceive auditors and investors"); *Stadium Cap. LLC* v. *Co-Diagnostics, Inc.*, 2024 WL 456745, at *5-6 (S.D.N.Y. Feb. 5, 2024) (defendant admitted they "saw the…falloff" as the "second quarter progressed"). Such allegations are absent here.

**Pricing Pressures**: Plaintiff argues that scienter is pleaded by belated "admissions" that TI was harmed by price competition. (Opp. 21-23.) This argument is irrelevant to Plaintiff's claim that TI lied about its AI capabilities. If anything, pricing adjustments presuppose the *existence* of sold products and services. *In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 689 (S.D.N.Y.) (rejecting "assertion…contradicted by Plaintiffs' other allegations"), *aff'd*, 666 F. App'x 78 (2d Cir. 2016). In any event, TI made robust disclosures warning about immense pricing pressures and price discounts. (Ex. 12 at 14; Ex. 11 at 10.) These disclosures support an opposite inference to fraud.

**Cost Savings**: Plaintiff contends Defendants "knew" that TI lacked AI capabilities, and thus could not achieve projected AI-based cost efficiencies. (Opp. 23.) But Plaintiff fails to identify any internal cost-cutting initiative TI claimed but lacked, or what contradictory information Defendants knew and when. *Hampshire Equity Partners II, L.P.* v. *Teradyne, Inc.*, 2005 WL 736217, at *4 (S.D.N.Y. Mar. 30, 2005) (complaint "not only…fail[s] to describe any documents, reports, or conversations…[but also] alleges almost no supporting facts at all"), *aff'd*, 159 F. App'x 317 (2d Cir. 2005). Absent such facts, missed forecasts do not support fraud. *City of Sterling Heights Police & Fire Ret. Sys.* v. *Vodafone Grp. Pub. Co.*, 655 F. Supp. 2d 262, 269 (S.D.N.Y. 2009).

9

**Remaining Arguments**:   Plaintiff resorts to arguments routinely rejected under the PSLRA.  That Defendants spoke about the Company, revenues, and margins is insufficient to support scienter without particularized facts supporting fraud.[11]  (Br. 23-24.)  Likewise, generic claims of "visibility" into operations (Opp. 24 & n.21) are not sufficient to plead contemporaneous knowledge of unidentified contrary facts.  *Turquoise Hill*, 625 F. Supp. 3d 164, 238 (S.D.N.Y. 2022) (rejecting purported "admissions…that [defendants] were 'plugged in' and had 'visibility'" without particularized facts).  Plaintiff also does not refute that the core operations doctrine—if it exists at all—can serve only as supplemental evidence of scienter, and pleads neither a "core operation" Defendants misrepresented, nor the requisite additional support.  (Br. 24-25.)[12]

\* \* \* \* \*

Plaintiff fails to raise an inference of fraudulent intent that is "cogent and at least as compelling as any opposing inference." *Teamsters Loc. 445 Freight Div. Pension Fund* v. *Dynex Cap. Inc.*, 531 F.3d 190, 194 (2d Cir. 2008).  Plaintiff identifies no motive to lie and no facts supporting that Defendants ***intentionally*** misrepresented their optimism about TI's outlook and AI-related capabilities.  The far more compelling inference is that, amid difficult macroeconomic

---

[11]   Plaintiff's own cases show that mere discussion of a topic cannot establish scienter, without factual allegations showing access to contradictory information.  *In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 227 (S.D.N.Y. 2021) (defendant admitted "we saw these [declining spending] trends unfolding" "earlier this year"); *In re STMicroelectronics N.V. Sec. Litig.*, 2025 WL 2644241, at \*3 (S.D.N.Y. Sept. 15, 2025) (defendant was "called out…in senior staff meetings" by CW); *Yannes* v. *SCWorx Corp.*, 2021 WL 2555437, at \*5 (S.D.N.Y. June 21, 2021) (defendant "personally 'spent weeks researching'"); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 457, 460 (S.D.N.Y. 2005) (defendants were "direct[ly] involved in the day-to-day operations").

[12]   In all three cases Plaintiff cites, the statements concerned critical aspects of the company's business, unlike here, and the court recognized that the doctrine could only *supplement* scienter.  (Opp. 25.)

10

conditions and competition—which Defendants disclosed—Defendants were optimistic about TI's continued development of AI offerings, including (as disclosed) through pilots.

## III.     Plaintiff Fails to Plead Loss Causation

Because neither alleged corrective disclosure revealed the falsity of any Challenged Statement, the Complaint does not plead loss causation.

**May 9, 2024**.  Plaintiff admits TI disclosed disappointing 1Q24 financial results on May 9, 2024, but claims that this disclosure corrected TI's prior false statements by attributing its revenue misses to AI pilots, revealing that it had no AI offerings.  (Opp. 26-27.)  Again, TI did not say this.   Rather, Defendants discussed pilots as indicating "expanding opportunities" and "momentum" for future revenue—and ***did not say*** that TI had no AI offerings.  (Ex. 16 at 4-5.)[13] The analyst report Plaintiff cites says nothing about the status of TI's AI offerings or use of pilots— it correctly attributed TI's revenue miss to the fact that customer "spending has trended negative across the IT Services/BPO space through Q1," and noted "cost-saving initiatives" among other changes needed to improve margins.  (Ex. 19 at 1.)[14]

**August 2, 2024**.   TI's 2Q24 earnings announcement likewise did not "correct" any Challenged Statement, instead disclosing disappointing results and reduced guidance.  (Br. 26.) Plaintiff seizes on Defendants' report that it would take longer than anticipated to realize projected cost savings from TI's internal cost-cutting initiatives, but ignores cases showing that delays in achieving results is ***not*** corrective of earlier projections.  (Br. 25-26.)  Nothing in TI's August 2 disclosure revealed that TI lacked any previously professed AI capability.  (Br. 2, 27.)  Further,

---

[13]   This is unlike *Abramson* v. *Newlink Genetics Corp.*, 965 F.3d 165, 179-80 (2d Cir. 2020), where the corrective disclosure revealed that the clinical trial failed due to concealed, improper study design.

[14]   *Boston Ret. Sys.* v. *Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 141 (D. Conn. 2021), where such analyst commentary did exist, is inapposite.

TI's disclosures about reduced margins and pricing pressures revealed nothing new because TI had previously disclosed those pressures.  (*Supra* 6-7; Br. 26-27.)

## **CONCLUSION**

Defendants respectfully seek dismissal of the Complaint with prejudice.

Dated: January 14, 2026

New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

*/s/ Audra J. Soloway*
Audra J. Soloway
Emily M. Miller
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
asoloway@paulweiss.com
emiller@paulweiss.com

*Counsel for TELUS International (CDA) Inc., Jeffrey Puritt, Vanessa Kanu, Gopi Chande, and Michael Ringman*

13

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1. I relied on the word count of the word-processing system used to prepare the document.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 3,500 words.

/s/ Audra J. Soloway
Audra J. Soloway

14